NOT DESIGNATED FOR PUBLICATION

No. 112,810

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JORDAN X. SANCHEZ,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed November 13, 2015. Reversed and remanded.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., PIERRON and LEBEN, JJ.

*Per Curiam*: Jordan X. Sanchez appeals from the revocation of his probation. He was convicted of two felonies: possession of marijuana with the intent to distribute it and possession of marijuana without a tax stamp. The court sentenced Sanchez to an 18-month probation with an underlying prison term of 14 months that he would have to serve if he did not successfully complete his probation.

Sanchez and a companion had been arrested in March 2012 after they were found with a backpack and another pouch containing about 200 grams of marijuana. Sanchez

pled guilty to the two charges for which he was convicted; as part of a plea agreement, the State dismissed a third felony charge. Also as part of the plea agreement, the State recommended the shortest sentences available under the Kansas Sentencing Guidelines, recommended that the sentences run concurrently, and recommended probation with Community Corrections Field Services. The recommendation for probation was significant because Sanchez' presumptive sentence under the sentencing guidelines was prison.

At sentencing, the court followed most of the terms of the plea agreement, sentencing Sanchez to an 18-month probation with an underlying prison sentence of 14 months. The court admonished Sanchez that he needed to comply with his probation's terms and that he should not expect "a whole lot of wiggle room if there is a problem."

Five months later, the State filed a motion to revoke Sanchez' probation. The State alleged that Sanchez had been arrested several days before for unlawful possession of controlled substances, possession or use of drug paraphernalia, and violation of his curfew. Sanchez admitted to the violations and requested a return to probation; Sanchez claimed he was arrested while he was out with a friend, whom he had allowed to put marijuana and paraphernalia in the glove box of his vehicle while they were together.

Because there was some uncertainty as to whether a drug court would accept Sanchez, the State asked the court to postpone its decision for 2 weeks to attempt a referral to drug court. If the drug court did not accept Sanchez, the prosecutor suggested residential placement. Defense counsel disagreed and simply requested the court reinstate Sanchez' probation, citing his clean urinalysis results on probation and the fact that he had nearly completed his community-service obligations. Defense counsel also said that Sanchez had obtained his high school diploma and had worked full time for a few weeks before his arrest on the probation-violation warrant. After a stern lecture to Sanchez, the court agreed to postpone sentencing to allow for a drug-court evaluation.

2

At a follow-up hearing, the parties advised the court that Sanchez' application to the drug court had been denied. The State argued that Sanchez obviously needed more structure to comply with court orders. Defense counsel agreed and suggested that Sanchez be placed in the community-corrections residential facility. After warning Sanchez again that he needed to change the direction of his life, the court revoked and reinstated Sanchez' probation. The court ordered Sanchez to obtain a mental-health evaluation and report to the community-corrections residential program, and it extended his probation for an additional 18 months.

About 4 months after this reinstatement, Sanchez' intensive-supervision officer filed an application to revoke Sanchez' probation. The officer alleged that on and after December 26, 2013, Sanchez had been cited for possessing contraband while at the residential center, failing to follow staff instructions on five occasions, being disrespectful to staff, and being away from his assignment.

A revocation hearing was held on February 21, 2014. During this hearing, Sanchez stipulated to committing the violations and waived his right to an evidentiary hearing. Although the State recommended Sanchez be ordered to serve his sentence, defense counsel argued for another chance at probation. He noted that Sanchez had no prior criminal history, was a nonviolent offender, and had complied with many of the conditions of his probation, including paying his court costs and fines. Finally, counsel argued that Sanchez' recent problems were due to the fact that he had lost his job and had become anxious and depressed. The district court revoked Sanchez' probation and ordered him to serve the remainder of his prison sentence (with credit for time served). Sanchez appealed to this court.

On appeal, Sanchez asserts that the district court abused its discretion in revoking his probation rather than applying the graduated sanctions of K.S.A. 2014 Supp. 22-

3716(c). Alternatively, Sanchez argues that sending him to prison instead of reinstating probation was an abuse of discretion.

Sanchez did not argue for application of the graduated sanctions in the district court, and generally a party may not raise an issue on appeal that has not been raised there. There are exceptions to that rule, however, including when an issue involves only a question of law arising on proved or admitted facts that is determinative of the case or appeal. See *State v. Barber*, 302 Kan. 367, 385, 353 P.3d 1108 (2015). Sanchez argued in his appellate brief that this exception applies, and we agree. The parties do not dispute any facts related to whether the graduated-sanctions provisions apply, and considering these provisions will settle the appeal.

The State does not dispute that K.S.A. 2014 Supp. 22-3716(c)'s graduated-sanctions provisions apply in this case. However, it argues that the district court substantially complied with its provisions.

K.S.A. 2014 Supp. 22-3716(c) requires a sentencing court to impose an intermediate sanction on a probationer before ordering the probationer to serve the underlying prison sentence unless certain exceptions apply. See K.S.A. 2014 Supp. 22-3716(c)(1). These sanctions can be for 2 to 3 days in a county jail (not more than 18 days total), K.S.A. 2014 Supp. 22-3716(c)(1)(B), or for 60 to 120 days in prison if the probationer has already received an intermediate sanction, K.S.A. 2014 Supp. 22-3716(c)(1)(C). See *State v. Huckey*, 51 Kan. App. 2d 451, 454, 348 P.3d 997, *rev. denied* 302 Kan. ___ (2015). The statute also describes situations in which graduated sanctions are not required.

In this case, the district court imposed an intermediate sanction when it modified Sanchez' probation to Community Corrections Residential Services. For a second violation, the court should have complied with K.S.A. 2014 Supp. 22-3716(c)(1)(C)

4

before revoking Sanchez' probation unless a statutory exception applied. The State contends that the court's actions fell within the exception of subsection (c)(9), which states:

> "The court may revoke the probation, assignment to a community correctional services program, . . . or nonprison sanction . . . without having previously imposed a sanction pursuant to subsection (c)(1)(B), (c)(1)(C) or (c)(1)(D) *if the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction.*" (Emphasis added.) K.S.A. 2014 Supp. 22-3716(c)(9).

The State's argument is based on comments the district court made orally at the hearing on revocation. The prosecutor had argued that Sanchez was not amenable to probation, was a danger to the community, and would be better served if he were sentenced to prison. The district court then provided detailed reasons why it found Sanchez not amenable to further probation:

> "You violated once, we up'd things up, put you in Community Corrections Residential. I mean, we had a talk and everything about, you know, you got to follow the rules over there. And, yeah, it's strict but, I mean, it's Community Corrections. It's the Residential Facility and they have to do that in order to maintain order, in order to make sure folks are staying out of trouble and working towards turning their lives around.

> "I don't have anything—the courts don't have anything, short of prison, more than Community Corrections Residential so at this point there's really no viable option. I mean, you've proven you are not willing at this point to do the probation. Now, you're going to have these same issues, Mr. Sanchez, if you don't turn things around. But this is your life. I have no magic wand up here.

> "I cannot change your life. I can put somebody on probation, outline all these things to help them change. [It's] up to the person to whether or not they're going to do those. All of these resources that we afforded you on probation, you know, treatment,

5

mental health, that's available when you get out. And I would encourage you to take advantage of it because you deserve better than where your choices have gotten you. Alcoholics Anonymous, Narcotics Anonymous, that's the key with regard to your drug issue.

"I'll revoke your probation and impose the underlying prison sentence of 14 months, will order that you be given credit for all the time you've served in custody."

We must determine whether the court's comments complied with K.S.A. 2014 Supp. 22-3716(c)(9), as the State asserts.

Our court has previously noted that a court does not need to use any specific language or "magic words" to comply with the statute:

"It is important to note that the plain and unambiguous language of the statute does not require any magic words. Rather, it requires that the *reasons* for finding that the members of the public will be jeopardized be stated with particularity. See *Cady v. Schroll*, 298 Kan. 731, 738-39, 317 P.3d 90 (2014) (stating that the most fundamental rule of statutory interpretation is that the intent of the legislature governs if that intent can be ascertained by reading the plain language of the statute and giving common words their ordinary meanings)." *State v. Davis*, No. 111,748, 2015 WL 2137195, at *3 (Kan. App.), *rev. denied* 302 Kan. ___ (September 15, 2015).

Even so, the statute, on its face, requires the court to determine *and set forth with particularity* either that the defendant is a safety risk to the public or that an intermediate sanction would not serve the defendant's welfare. The State contends that when the district court brought up the defendant's failed attempts at probation and said it had no remaining alternative but prison, this was sufficient to establish that the court found a danger to society existed. The State points to our court's decision in *Davis* for support.

6

In *Davis*, however, the defendant had been convicted of one count of indecent solicitation of a child and was placed on 24 months' probation. Shortly thereafter, the State moved to revoke Davis' probation because he committed a number of violations, including failing to update his address with the Kansas Sex Offender Registry, failing to complete his sex-offender evaluation, and having contact with minor children. After hearing arguments, the court detailed all of the defendant's "disturbing" violations, including his failure to accurately register and having contact with minor children. The court then concluded: "'Finally then, we have some objective evidence that *your supervising officer was able to perform at least some part of the sex offender evaluation, and it appears that you scored either moderately or high risk of recidivism. . . . This Court . . . cannot simply wait until you do harm* [*to*] *an individual.*'" 2015 WL 2137195, at *2. The court then revoked the defendant's probation.

In *Davis*, the district court's concern about public safety is self-evident from its statements during the hearing. The court in this case made no statements that expressed any concern about public safety and certainly made no statements with particularity. Although the court's comments hint that the defendant's welfare is a concern, the court failed to mention intermediate sanctions and even seems unaware of the option of intermediate sanctions in this case. To be set forth with particularity, findings "must be distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details." *State v. Huskey*, 17 Kan. App. 2d 237, Syl. ¶ 2, 834 P.2d 1371 (1992); see also *State v. Jones*, 30 Kan. App. 2d 210, 214, 41 P.3d 293 (2001) (failure to explain extending probation beyond the presumptive term).

Because the district court failed to comply with the statutory mandate, its decision was based on an error of law. Accordingly, it constitutes an abuse of discretion. See *Fisher v. State*, 296 Kan. 808, Syl. ¶ 8, 295 P.3d 560 (2013). Accordingly, we must reverse the district court's decision and remand the case for further proceedings.

7

In closing, we note that it is quite possible that Sanchez may have fully served his prison term by the time of this decision. But we have not been formally notified by the State of any change in Sanchez' custodial status under Rule 2.042 (2014 Kan. Ct. R. Annot. 18). Nor has Sanchez filed any suggestion of a change in his custodial status.

The district court's judgment is reversed, and this case is remanded for further proceedings consistent with this opinion.